**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES ex rel. GEORGE FERNANDEZ (#B70201),<br><br>Petitioner,<br><br>v.<br><br>RANDY PFISTER,[1] Acting Warden, Pontiac Correctional Center,<br><br>Respondent. | )<br>)<br>)<br>)<br>)   Case No. 07 C 2843<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On April 11, 2011, the Court held a competency hearing to determine whether habeas petitioner George Fernandez is competent to assist his counsel in the present habeas proceeding. For the following reasons, Fernandez is not presently competent to assist his counsel in the instant habeas proceeding, and therefore, the Court grants Fernandez's request for a temporary stay of up to one year.

## LEGAL STANDARD

In *Rees v. Peyton,* 384 U.S. 312, 314, 86 S.Ct. 1505, 16 L.Ed.2d 583 (1966), the Supreme Court held that when determining a habeas petitioner's mental competence to forego judicial proceedings, the court must ask "whether he has [the] capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation."  In *Holmes v.*

---

[1]  Randy Pfister replaced Guy Pierce as the Acting Warden of the Pontiac Correctional Center, where Fernandez is currently incarcerated.  The Court, therefore, substitutes Pfister as the proper Respondent in this habeas case.  *See* Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts; Fed. R. Civ. P. 25(d).

*Buss,* 506 F.3d 576, 578-79 (7th Cir. 2007), the Seventh Circuit adopted the Ninth Circuit's

holding in *Rohan ex rel. Gates v. Woodford,* 334 F.3d 803 (9th Cir. 2003), for the proposition

that "in a capital case a petitioner for federal habeas corpus must be competent to assist his

counsel; if not, the proceeding must be stayed." *Holmes,* 506 F.3d at 578. The Seventh Circuit

has not addressed whether the *Holmes* decision extends to non-capital habeas cases,

nevertheless, the *Holmes* decision teaches that "[w]hatever the nature of the proceeding, the test

should be whether the defendant (petitioner, appellant, etc.) is competent to play whatever role in

relation to his case is necessary to enable it to be adequately presented." *Id.* at 579. Further, the

Court's application of this standard depends on the circumstances of the case, including "not

only the litigant's particular mental condition but also the nature of the decision that he must be

competent to make." *Id.*

### PROCEDURAL BACKGROUND

In 2001, after a trial in the Circuit Court of Cook County, a jury convicted Fernandez of

aggravated vehicular hijacking. Thereafter, the Circuit Court sentenced Fernandez to eighteen

years imprisonment. Fernandez appealed and the Illinois Appellate Court affirmed his

conviction and sentence on September 24, 2002. Fernandez did not file a petition for leave to

appeal ("PLA") in the Supreme Court of Illinois nor did he file a petition for a writ of certiorari

in the United States Supreme Court.

On November 14, 2002, Fernandez filed a pro se post-conviction petition pursuant to the

Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1, *et seq.*, in the Circuit Court of Cook

County. On May 4, 2004, Fernandez filed a supplemental petition. On May 13, 2004, the

Circuit Court denied Fernandez's post-conviction petition and the Illinois Appellate Court

affirmed this denial on November 7, 2005. Thereafter, Fernandez filed a post-conviction PLA that the Supreme Court of Illinois denied on May 24, 2006.

In May 2007, Fernandez filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d). Construing his pro se habeas petition liberally, *see McGee v. Bartow,* 593 F.3d 556, 565-66 (7th Cir. 2010), Fernandez brought the following habeas claims: (1) his appellate counsel was constitutionally ineffective for failing to raise on direct appeal that the trial court erred in giving jury instruction IPI Criminal 4th No. 3.15; (2) his right to a fair trial was violated when (a) the State misstated evidence in closing arguments in a manner that eased the government's burden of proof, and (b) the State asserted as fact something that had not been proven or testified to at trial; and (3) his trial counsel was constitutionally ineffective for failing to (a) object to the prosecutor's misstatement of the evidence and closing arguments, (b) present Fernandez's facial tattoos as proper non-testimonial evidence, and (c) object to the trial court's erroneous jury instruction.

After the Court lifted the stayed in the present matter – that was pending while Fernandez exhausted his state court remedies in the Illinois courts – the Court appointed Fernandez counsel on December 8, 2009. In February 2010, Fernandez's appointed counsel filed a motion for a fitness examination for the purposes of determining whether Fernandez was mentally competent to assist and direct counsel in the present habeas proceeding. On February 12, 2010, the Court entered the following unopposed order:

> The State of Illinois shall promptly make available to Petitioner's counsel for copying (at the expense of Petitioner's counsel) all medical and related records respecting George Fernandez, #B70201, in the possession of the State of Illinois Department of Corrections, which Petitioner's counsel shall in turn make available to each psychiatrist who will examine George Fernandez;

Petitioner's counsel shall promptly make available to the State of Illinois for copying (at the expense of the State of Illinois) all medical and related records respecting George Fernandez that are currently in the possession of George Fernandez and/or his mother, Valerie Beesley, including any records that are obtained from third parties;

All medical and related records in the possession of the State of Illinois and Petitioner's counsel shall be made available to the qualified forensic psychiatrist hired by Petitioner's counsel to examine George Fernandez, as well as to any qualified forensic psychiatrist that the State of Illinois may engage to examine George Fernandez;

Each forensic psychiatrist who examines George Fernandez shall prepare a brief report summarizing the psychiatrist's examination, diagnosis, and conclusions regarding George Fernandez's current mental competence to assist in and direct his attorneys in the present habeas proceeding brought under 28 U.S.C. § 2254(d), and if George Fernandez is found to be incompetent, providing recommendations as to whether his competency is likely to be restored with appropriate treatment and medication within a reasonable period of time, and providing any appropriate recommendations as to what treatment and medication should be provided to George Fernandez to stabilize his condition and restore his mental competency; and

The parties shall promptly file with the Court any report prepared in accordance with the preceding paragraph, and in light of such report or reports, recommend to the Court a proposed course of action in this proceeding.

(R. 79, 2/12/2010, Minute Order.)

On March 19, 2010, Fernandez filed a motion for an extension of time to amend his petition for a writ of habeas corpus that the Court granted on March 22, 2010. In his motion for an extension of time, Fernandez explained that two experts, Dr. Keenan Ferrell, a licensed clinical psychologist, and William Woods, a psychological examiner, would perform a fitness examination pursuant to the Court's February 12, 2010, Minute Order.

During the week of July 26, 2010, Fernandez's counsel received a letter from Fernandez suggesting that he was currently in danger to himself due to his mental condition. Counsel then arranged a teleconference in which Dr. Ferrell participated and during which Fernandez came

across as extremely agitated and anxious describing acts of self-mutilation that he had performed on himself. Following the call, counsel conferred with Dr. Ferrell, who concluded that Fernandez posed an imminent danger to his own health and safety. Counsel then contacted Respondent to ascertain whether Respondent would object to having an outside psychiatrist prescribe anti-anxiety medication for Fernandez. Respondent rejected appointed counsel's request. Shortly thereafter, on August 5, 2010, Fernandez's counsel filed an Emergency Motion to Request Immediate Medical and Psychiatric Care. On August 6, 2010, the emergency judge denied Fernandez's motion because the court concluded that it lacked authority to order the requested relief. Fernandez then filed a motion for reconsideration on August 18, 2010.

On November 29, 2010, the Court denied Fernandez's motion for reconsideration, but directed the parties to file an agreed upon proposed course of action for this habeas proceeding. On December 20, 2010, the parties filed a joint status report and requested a fitness hearing. The parties filed a joint pre-hearing brief on February 28, 2011. The Court conducted Fernandez's fitness hearing on April 11, 2011.

## HEARING TESTIMONY

Fernandez attended his fitness hearing pursuant to a writ of habeas corpus ad testificandum. Dr. Keenan Ferrell, a licensed clinical psychologist, and William Woods, a psychological examiner, testified at the fitness hearing on Fernandez's behalf. Respondent did not present any witnesses at the fitness hearing.

Woods testified that he first met with Fernandez in June 2010 and that he had met with him on three separate occasions. (Hr'g Tr. at 20.) He stated that he met with Fernandez to conduct psychological testing, whereas Dr. Ferrell met with Fernandez to conduct a clinical

interview.  (*Id.*)  Woods explained that the tests he administered were used to assess Fernandez's emotional, cognitive, and intellectual functioning.  (*Id*. at 25.)  Further, Woods testified that he reviewed the results as an examiner after which Dr. Ferrell reviewed the data and conclusions. (*Id*. at 27.)  Woods elucidated that he conducted the assessments to provide a professional opinion as to Fernandez's functioning level, namely, how Fernandez was coping with and managing his mental illness.  (*Id.* at 35.)

Thereafter, Woods discussed his and Dr. Ferrell's July 2010 evaluation report, which was admitted into evidence without objection.  (*Id*. at 34-42.)  In discussing Fernandez's personality testing, the report states:

> Although Mr. Fernandez's cognitive functioning is at the lower end of the High Average range, his paranoia and generally distraught emotional state prevents him from effectively utilizing his cognitive strengths in any consistent and effective way.  Thus, on an apparent daily basis, Mr. Fernandez struggles to cope with a distraught state related to significant paranoid fears.

(Ex. B, July 2010 Report, GF 000875.)  Also, the Summary and Recommendations section of the report states in relevant part: "Given Mr. Fernandez's prominent paranoid delusions, it is this examiner's opinion that he is unable to effectively assist in his own defense."  (*Id*. at GF 000876; Tr. at 40.)  At the fitness hearing, Woods clarified that he understood that the present case did not involve a criminal prosecution, but was a habeas proceeding.  (Tr. at 41.)

Woods also discussed Fernandez's short-term and long-term memory explaining that Fernandez has severe paranoia "so he may remember something accurately that occurred, but may overrule that memory and tell himself that he is not remembering it correctly and put a paranoid aspect to it that's not reality based."  (*Id.* at 60.)  Woods further testified that depending on the day and Fernandez's functioning at the time, Fernandez could recall facts of his

underlying criminal case.  (*Id.* at 61.)

Next, Dr. Ferrell testified that he co-authored the July 2010 report with Woods.  (*Id.* at 79.)  He further testified that after he completed this initial report, he spoke to Fernandez in August 2010 and November 2010.  (*Id.* at 80-81.)  Dr. Ferrell then explained his diagnoses in the July 2010 report that are based on the DSM-IV – the Diagnostic and Statistical Manual – used by practitioners in his field.  (*Id.* at 85.)  More specifically, he testified that Axis I is the clinical skill implying the most severe and prominent illness that needs treatment.  (*Id.*)  With respect to the July 2010 report, Axis I states "R/0 296.7, Bipolar 1 Disorder, most recent episode unspecified."  (*Id.*)  Dr. Ferrell explained that this implies that "there was significant evidence to suggest a bipolar disorder, which indicates a depressive disorder with a manic – hypermanic or hypomanic – element or variable that is not specified at that point for lack of evidence."  (*Id.* at 86.)

Dr. Ferrell also discussed his second report entitled "Mental Status Update" from November 2010, which was entered into evidence without objection.  Dr. Ferrell noted that the psychological evaluation result for Axis I had changed to "296.4, Bipolar 1 Disorder, with severe paranoid features."  (*Id.* at 87.)  He explained that this "indicates that at that point there was significant data to formulate and make the diagnosis and to specify the specific features of the diagnosis, based on meeting those very specific criteria of the DSM-IV."  (*Id.*)  Dr. Ferrell testified that after his most current visit with Fernandez in March of 2011, he did not change Fernandez's Axis I diagnosis, and so the final Axis I diagnosis is "296.4, Bipolar 1 Disorder, with severe paranoid features."  (*Id.*)

In addition, Dr. Ferrell discussed Fernandez's Axis II diagnosis, namely, 301.83,

Borderline Personality Disorder. (*Id*. at 88.) He elucidated that "borderline style indicates that there is a pervasive mistrust of others, as well as severe difficulty in engaging in conflictual information or challenging emotional stimuli, as well as the inability to remain reality focused." (*Id*.) In the meantime, Dr. Ferrell discussed his conclusion in the July 2010 report that based on Fernandez's prominent paranoid delusions, Fernandez was unable to assist counsel in this proceeding. (*Id*. at 92.) More specifically, Dr. Ferrell testified:

> [Fernandez's] cognitive functioning is so dominated by paranoid delusions and they are so pervasive that any attempt to communicate with him about his own best interests would also be diluted by his ongoing cognition that he's being under attack, unfairly scrutinized, spied upon and in some way victimized.

(*Id*.)

Dr. Ferrell testified that Fernandez's "retrospective memory contained several elements that appeared to be somewhat delusional in manner and appeared to be unreliable in terms of clarity and accuracy." (*Id*. at 96.) He also stated that because bipolar disorder contains the elements of depression it could affect Fernandez's "ability to concentrate and to clearly and accurately take in the environmental stimuli." (*Id.* at 97-98.)

Next, Dr. Ferrell discussed his March 2011 report – that was admitted into evidence without objection – in which Dr. Ferrell noted that Fernandez is taking medication for his bipolar disorder and anxiety. (*Id*. at 101-02.) Despite the fact that Fernandez is taking these medications, Dr. Ferrell noted in the March 2011 report that Fernandez continued to have difficulty concentrating. (*Id*. at 102.) Dr. Ferrell specifically testified that there was no significant material difference in Fernandez's mental condition while he was taking the medications. (*Id.* at 103.) Dr. Ferrell further opined that he considered whether Fernandez was malingering and came to the conclusion that he was not. (*Id*. at 106.)

In sum, Dr. Ferrell concluded that Fernandez's prognosis is guarded at best due to the longevity of his mental illness and the probability that there may be an organic brain disorder. (*Id*. at 106-07.)  Dr. Ferrell explained that although medication and therapy may decrease Fernandez's symptoms, the symptoms will not completely go away.  (*Id*. at 107.)

## ANALYSIS

As the *Holmes* decision instructs, in determining whether a habeas petitioner can assist counsel, the Court must consider "not only the litigant's particular mental condition but also the nature of the decision that he must be competent to make."  *Id*. at 579.  To this end, Fernandez must have the ability to recall facts and circumstances, concentrate on the relevant issues, and communicate with his counsel in the context of his ineffective assistance of counsel and fair trial claims.  *See id.* at 580 ("The petitioner was at his trial; his current lawyers were not.  He may – if mentally competent – be able to convey to his lawyers a better sense of the alleged misbehavior of the prosecutor and of defense counsel than the trial transcript and other documentation provide."); *see also Rohan,* 334 F.3d at 818 (petitioner "is in a unique position to testify about the extent of his trial counsel's efforts"); *Nash v. Ryan,* 581 F.3d 1048, 1057 (9th Cir. 2009) (petitioner must have "the ability to understand and communicate rationally with counsel when necessary").

Here, Respondent admits that Fernandez "suffers from a mental illness as he has received varying diagnoses throughout his life, including bipolar disorder, borderline personality disorder, and paranoid personality disorder."  (R. 130, Post-Trial Brief at 1-2.)  Nonetheless, Respondent argues that despite the fact that Fernandez has demonstrated "unusual and troubling behavior" since filing his habeas petition, evidence in the record reveals that Fernandez is capable of

recalling the details of his criminal case and communicating with his appointed counsel. In support of this argument, Respondent argues that Dr. Ferrell's and Woods' hearing testimony to the contrary is unconvincing.

First, it is undisputed that Dr. Ferrell and Woods were qualified to testify as experts regarding Fernandez's mental capacity. (Hr'g Tr. at 19, 70.) Further, Dr. Ferrell's and Woods' opinions are support by their extensive research and review of the relevant mental health records and materials in this matter, along with their interviews and testing of Fernandez. Meanwhile, Respondent's argument that Dr. Ferrell's testimony was unconvincing based on his testimony regarding Fernandez's ability to speak Spanish – an issue involving Fernandez's defense to the aggravated vehicular hijacking charge – is irrelevant to the Court's analysis of Fernandez's mental competency. Respondent's further attempt to discredit Woods' and Dr. Ferrell's testimony by arguing that they misunderstood the purpose of Fernandez's evaluation is equally unavailing. To clarify, Respondent argues that Woods and Dr. Ferrell thought this was a criminal proceeding. Not only did Woods acknowledged that this proceeding was not a criminal prosecution at the fitness hearing, whether Woods or Dr. Ferrell understand that this is a federal habeas proceeding is irrelevant to their conclusions pertaining to Fernandez's mental capacity. *See Holmes,* 506 F.3d at 579 ("[w]hatever the nature of the proceeding, the test should be whether the defendant (petitioner, appellant, etc.) is competent to play whatever role in relation to his case is necessary to enable it to be adequately presented.").

Moreover, there is abundant evidence in the record that Fernandez does not have the ability to assist his counsel in this habeas proceeding because he has memory problems and does not have the ability to concentrate. Dr. Ferrell, for example, testified that Fernandez's

"retrospective memory contained several elements that appeared to be somewhat delusional in manner and appeared to be unreliable in terms of clarity and accuracy." (Hr'g Tr. at 96.) He further testified that because bipolar disorder contains the elements of depression it could affect Fernandez's "ability to concentrate and to clearly and accurately take in the environment." (*Id*. at 97-98.) In addition, in the March 2011 report, Dr. Ferrell noted that despite the fact that Fernandez was taking medications, he continued to have difficulty concentrating. (*Id*. at 102.) And, although Woods testified that depending on the day and Fernandez's functioning at the time, Fernandez could recall facts of his underlying criminal case, he also explained in the context of Fernandez's short-term and long-term memory that Fernandez "may remember something accurately that occurred, but may overrule that memory and tell himself that he is not remembering it correctly and put a paranoid aspect to it that's not reality based." (*Id.* at 60.)

There is also evidence in the record that Fernandez does not have the ability to coherently communicate with his counsel. As Dr. Ferrell testified:

> [Fernandez's] cognitive functioning is so dominated by paranoid delusions and they are so pervasive that any attempt to communicate with him about his own best interests would also be diluted by his ongoing cognition that he's being under attack, unfairly scrutinized, spied upon and in some way victimized.

(*Id*. at 92.) Dr. Ferrell's conclusion is corroborated by appointed counsel's affidavit filed under seal. (*See* Ex. 8, Peel Aff. ¶¶ 9, 19.) In addition, Dr. Ferrell testified that when Fernandez recalled information about his criminal defense, Fernandez's interpretation of the defense was "so diluted that it was difficult to establish the accuracy or clarity of the information." (Hr'g Tr. at 122.)

Furthermore, although Fernandez obtained documents pertinent to his medical history for counsel and followed the directions and completed the tests that Woods administered,

Fernandez's ability to assist counsel under the circumstances is intermittent at best. *See Holmes v. Levenhagen,* 600 F.3d 756, 759 (7th Cir. 2010). Dr. Ferrell, for example, testified that although Fernandez could remember very specific and obsessive details of his criminal case, the accuracy of these details was dubious at best. (Hr'g Tr. at 140.) He further explained:

> [T]here was additional information provided that made no sense and was illogical and not verifiable. And there were many stories that although he would report an accurate situation, he would then add on something that was completely psychotic to it, like he'd use information based on the technobugs that roll in his head and tells him these things.

(*Id.*)

Based on the evidence in the record, including the fitness hearing testimony, the Court concludes that Fernandez is not presently competent to assist his counsel in this habeas proceeding. The Court grants Fernandez's request to stay these proceeding for up to one year.

## CONCLUSION

For these reasons, Fernandez is not presently competent to assist his counsel in the instant habeas proceeding and grants Fernandez's request for a temporary stay of up to one year.

**Dated:** July 14, 2011

ENTERED

**AMY J. ST. EVE**
**United States District Judge**