**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| GEORGE FERNANDEZ (B70201), ) | |
| ) | |
| Petitioner, ) | |
| ) | Case No. 07 C 2843 |
| v. ) | |
| ) | |
| RANDY PFISTER, Warden, Pontiac ) | |
| Correctional Center, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is Petitioner George Fernandez's amended petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254(d). For the following reasons, the Court denies Fernandez's amended habeas petition and declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## BACKGROUND

When considering habeas petitions, federal courts must presume the factual findings made by the last state courts to decide the case on the merits are correct unless the habeas petitioner rebuts those findings by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Ford v. Wilson,* 747 F.3d 944, 947 (7th Cir. 2014). Where Fernandez has not provided clear and convincing evidence to rebut this presumption of correctness, the following factual background is based on the Illinois Appellate Court's factual findings in *People v. Fernandez,* No. 1-01-1810 (1st Dist. Sept. 24, 2002) (unpublished) and *People v. Fernandez,* No. 1-04-2864 (1st Dist. Nov. 7, 2005) (unpublished).

## I. Factual Background

Following a 2001 trial, a jury convicted Fernandez of aggravated vehicular hijacking in the Circuit Court of Cook County, after which the Circuit Court judge sentenced him to 18 years in prison. Evidence at trial established that at approximately 10:30 a.m. on January 3, 1999, Jesus Lopez was standing next to the open driver's side door of his car, which was running, while he was on North Spaulding Avenue in Chicago. Lopez testified that a man, whom he later identified as Fernandez, spoke Spanish to him, put a gun to Lopez's chest, and demanded money. After Lopez gave Fernandez his money, Fernandez then told Lopez he wanted his car. Fernandez then entered the car and drove away. In addition, Lopez testified that the encounter lasted about three to five minutes giving him adequate time to view Fernandez's face. Lopez further testified that he called the police and gave a description of Fernandez to them. On the next day, Lopez went to the police station where he viewed a line-up and identified Fernandez. Chicago police detective Allen Pergande also testified at Fernandez's jury trial stating that on January 4, 1999, Lopez came to the police station, viewed a lineup, and identified Fernandez as the individual who took his car and money.

Chicago police officer Pamela Davis also testified at Fernandez's 2001 jury trial. She stated that on January 4, 1999, she saw Fernandez disobey a stop sign while he was driving. When she activated her emergency lights, Fernandez drove through another stop sign. Officer Davis further testified that she then saw Fernandez drive on the wrong side of the street and pass cars while he was speeding. Shortly thereafter, Fernandez stopped and Officer Davis parked behind him, after which she entered the car's license plate number into her computer revealing that Fernandez was driving Lopez's car. In addition, Officer Davis testified that she saw

2

Fernandez exit the car and walk toward her. She then radioed for assistance. Fernandez ran past Officer Davis, but other Chicago police officers pursued him in their squad car. Officer Davis also testified that she saw one of the police officers chase Fernandez on foot and arrest him. The States' Attorney charged Fernandez with armed robbery and aggravated vehicular hijacking.

## II.    Procedural Background

The jury found Fernandez guilty of aggravated vehicular hijacking, but not guilty of the armed robbery charge. On April 24, 2001, the Circuit Court judge sentenced Fernandez to a term of 18 years imprisonment. On May 2, 2001, Fernandez filed a pro se notice of appeal. On June 26, 2001, defense counsel appeared before the Circuit Court stating that Fernandez's case was on the court's motion call due to a request to reconsider Fernandez's sentence. Counsel informed the court that because Fernandez filed a pro se notice of appeal, the Circuit Court did not have jurisdiction to do anything except perfect the appeal. The Circuit Court agreed and entered an order removing Fernandez's case from the court's call.

On direct appeal to the Illinois Appellate Court, First District, Fernandez, by counsel, argued that his defense counsel was constitutionally ineffective for erroneously arguing that the Circuit Court did not have jurisdiction to reconsider his sentence. The Illinois Appellate Court concluded that defense counsel was not constitutionally ineffective. Thereafter, Fernandez did not file a petition for leave to appeal ("PLA") to the Supreme Court of Illinois.

On November 15, 2002, Fernandez filed a pro se petition for post-conviction relief in the Circuit Court of Cook County pursuant to the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1, *et seq.*, that counsel later supplemented. The supplemental petition contained an ineffective assistance of trial counsel claim based on counsel's failure to (1) call a non-family

3

witness to testify that Fernandez did not speak Spanish; (2) cite legal authority in support of the request that Fernandez be permitted to display his tattoos to the jury; and (3) object to the Illinois pattern jury instruction on eyewitness identification testimony. Furthermore, the supplemental post-conviction petition contained an ineffective assistance of appellate counsel claim based on appellate counsel's failure to raise the tattoo display and jury instruction issues on direct appeal. On May 13, 2004, the Circuit Court dismissed Fernandez's first post-conviction petition.

On post-conviction appeal, Fernandez argued the same ineffective assistance of trial counsel claims that he brought in his post-conviction petition. He also argued that appellate counsel was constitutionally ineffective based on appellate counsel's failure to raise the tattoo display and pattern jury instruction issues. On November 7, 2005, the Illinois Appellate Court affirmed the Circuit Court concluding that Fernandez had not established constitutionally ineffective assistance of trial or appellate counsel. In his counseled post-conviction PLA to the Supreme Court of Illinois, Fernandez argued that his trial counsel was constitutionally ineffective for failing to (1) call a non-family witness to testify that he did not speak Spanish; (2) cite legal authority in support of the request that he be permitted to display his tattoos to the jury; and (3) object to the Illinois pattern jury instruction on eyewitness identification testimony. Fernandez also argued that his post-conviction counsel failed to provide reasonable assistance of counsel and mentioned that appellate counsel was constitutionally ineffective for failing to understand that there was a legal basis for allowing Fernandez to display his tattoos to the jury and failing to object to the Illinois pattern jury instruction on eyewitness identification. On May 24, 2006, the Supreme Court of Illinois denied Fernandez's post-conviction PLA.

On January 27, 2005, while his first post-conviction petition was on appeal, Fernandez filed a second post-conviction petition raising claims that he did not bring in the present amended petition for a writ of habeas corpus. The Circuit Court denied Fernandez's second post-conviction petition on February 2, 2006. Fernandez's second post-conviction appeal was unsuccessful, and the Supreme Court of Illinois denied his second post-conviction PLA on September 30, 2009.

## III.     Habeas Petition

On March 22, 2007, Fernandez filed a pro se habeas petition pursuant to 28 U.S.C. § 2254(d). On August 20, 2007, the Court granted Respondent's motion to stay due to Fernandez's failure to exhaust his habeas claims. *See Rhines v. Weber*, 544 U.S. 269, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005). On December 2, 2009, the Court granted Fernandez's motion to lift the stay. On December 8, 2009, the Court granted Fernandez's motion for appointment of counsel and appointed the attorneys who presently represent Fernandez.

In February 2010, Fernandez's appointed counsel filed a motion for a fitness examination for the purposes of determining whether Fernandez was mentally competent to assist and direct counsel in the present habeas proceeding. Thereafter, on April 11, 2011, the Court held a competency hearing and, on July 14, 2011, the Court concluded that Fernandez was not competent to assist his counsel in this matter. In July 2012, the Court granted Fernandez's unopposed motion for appointment of his father, Alberto Fernandez, as guardian ad litem pursuant to Federal Rule of Civil Procedure 17(c). The Court appointed Alberto Fernandez as guardian ad litem for purposes of directing the present habeas litigation. In the summer of 2013, a psychologist re-evaluated Fernandez, after which counsel filed a status report with the Court

5

that contained an August 2013 report from the psychologist. The report concluded that Fernandez is not capable of assisting counsel in his habeas case and that there is no reasonable hope of restoration of competence. In light of Fernandez's continuing incompetence, appointed counsel consulted with Alberto Fernandez, as guardian ad litem, in drafting Fernandez's amended habeas petition filed on April 28, 2014.

In his amended habeas petition, Fernandez brings the following claims: (1) his trial counsel was constitutionally ineffective for (a) failing to call an independent witness on the issue of whether he spoke Spanish, (b) failing to object to the Illinois pattern jury instruction on eyewitness identification testimony, and (c) failing to provide case law showing that displaying Fernandez's tattoos to the jury would have been proper non-testimonial evidence; and (2) his appellate counsel was constitutionally ineffective for failing to argue that (a) the eyewitness testimony pattern jury instruction was improper, and (b) Fernandez should have been allowed to display his tattoos to the jury.

## LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the Court cannot grant habeas relief unless the state court's decision was contrary to, or an unreasonable application of federal law clearly established by the Supreme Court. *See Williams v. Taylor,* 529 U.S. 362, 402-03, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Ruhl v. Hardy,* 743 F.3d 1083, 1091 (7th Cir. 2014). In *Williams*, the Supreme Court explained that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a

6

result opposite to ours." *See id.* at 405; *see also Kamlager v. Pollard,* 715 F.3d 1010, 1015 (7th Cir. 2013) ("A state court decision is 'contrary to' federal law if it applies the wrong legal standard established by Supreme Court precedent or decides a case differently than the Supreme Court on materially indistinguishable facts.").

Under the "unreasonable application" prong of the AEDPA standard, a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See Williams,* 529 U.S. at 407. The state court's application of federal law must be more than incorrect, it must be "objectively unreasonable." *Ford v. Wilson*, 747 F.3d 922, 952 (7th Cir. 2014); *see also Williams*, 529 U.S. at 410 ("*unreasonable* application of federal law is different from an *incorrect* application of federal law") (emphasis in original). To be considered objectively unreasonable, a state court's decision must be "well outside the boundaries of permissible differences of opinion." *Kamlager,* 715 F.3d at 1016 (citation omitted).

## ANALYSIS

**I.    Ineffective Assistance of Trial Counsel Claims**

To establish constitutionally ineffective assistance of trial counsel under the Sixth Amendment, Fernandez must show that (1) his trial attorney's performance "fell below an objective standard of reasonableness," informed by "prevailing professional norms" and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "To reflect the wide range of competent legal strategies and to avoid the pitfalls of review in hindsight, [the Court's] review of an attorney's performance is highly deferential and reflects a

7

strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Groves v. United States,* 755 F.3d 588, 591 (7th Cir. 2014) (citation omitted). To establish prejudice, it is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding," instead trial counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Morgan v. Hardy,* 662 F.3d 790, 802 (7th Cir. 2011) (quoting *Strickland*, 466 U.S. at 687, 693). If Fernandez fails to make a proper showing under one of the *Strickland* prongs, the Court need not consider the other. *See Strickland,* 466 U.S. at 697 ("a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant"). Finally, as the Supreme Court teaches, because the "standards created by *Strickland* and § 2254(d) are both 'highly deferential,' when applying "the two in tandem, review is 'doubly so.'" *Harrington v. Richter,* 562 U.S. 86, 131 S.Ct. 770, 788, 178 L.Ed.2d 624 (2011).

### A. Failure to Present Additional Witness Testimony

First, Fernandez argues that his trial counsel was constitutionally ineffective for failing to present independent, unbiased witness testimony establishing that he could not speak Spanish, and thus could not have committed the aggravated vehicular hijacking. In particular, Fernandez argued on post-conviction appeal that although trial counsel called his mother to testify about his inability to speak Spanish, counsel should have called Patricia Kappel, the Director of the Boys and Girls Clubs of Chicago, who averred that she saw Fernandez regularly from ages 6 to 12 and that Fernandez never conversed in Spanish.[1]

---

[1] In his amended habeas petition, Fernandez contends that other individuals should have testified at his trial regarding his inability to speak Spanish. The Court need not determine Fernandez's claim based on these other individuals because the only argument he made on post-

8

The post-conviction Illinois Appellate Court discussed this ineffective assistance of counsel claim as follows:

> Defendant argues his counsel was ineffective for failing to present cumulative testimony to show he could not speak Spanish. Defendant's mother testified at trial that defendant did not speak Spanish. Defendant argues defense counsel should have called Patricia Kappel as a witness to bolster his mother's testimony. Kappel, in an affidavit attached to defendant's postconviction petition, said she knew defendant before the crime and that defendant did not speak Spanish at that time. It had been nine years since Kappel had spoken with defendant. Defendant maintains this evidence would have impacted the credibility of the victim's identification of defendant as Spanish-speaking.
>
> Defendant's claim does not meet the *Strickland* standard. First, defense counsel's failure to call Kappel as a witness was not unreasonable. Kappel had not spoken with defendant in nine years and was not competent to testify as to whether defendant could speak Spanish at the time of the crime. *See People v. Jackson,* 149 Ill.2d 540, 543-54, 599 N.E.2d 926 (1992) (failure to call character witness who had not been in contact with defendant for 10 years did not constitute ineffective assistance of counsel). Second, defendant cannot show that Kappel's testimony would have affected the result at trial. The testimony would have been cumulative of evidence already before the jury.... *People v. Brooks,* 251 Ill.App.3d 927, 934, 623 N.E.2d 1380 (1993) (failure of defense counsel to secure additional witnesses whose testimony would have been cumulative of the defendant's own testimony is not prejudicial under the *Strickland* standard.)

*People v. Fernandez,* No. 1-04-2864, at 3-4.

Here, Fernandez has not established that the Illinois Appellate Court's application of *Strickland* to his first ineffective assistance of counsel claim was objectively unreasonable, namely, that there is no reasonable basis for its decision. *See Cullen v. Pinholster,* 131 S.Ct. 1388, 1402 (2011). As the Illinois Appellate Court reasoned, trial counsel's failure to call

---

conviction appeal was that trial counsel erred in not calling Patricia Kappel as a witness concerning his ability to speak Spanish. In short, Fernandez did not properly exhaust his claim based on these additional individuals. *See Sturgeon v Chandler,* 552 F.3d 604, 610 (7th Cir. 2009) (petitioner must present same operative facts and controlling legal principles to state court to exhaust claims under 28 U.S.C. § 2254(b)(1)(A)).

Kappel as an additional witness was not constitutionally deficient, especially because Kappel had not spoken to Fernandez for nine years prior to his trial, and thus was not competent to testify as to whether Fernandez could speak Spanish at the time of the crime. Simply put, trial counsel's failure to call Kappel to testify that she never heard Fernandez speak Spanish when she knew him years before the vehicular hijacking did not fall outside of the wide range of professionally competent assistance. *See Pole v. Randolph,* 570 F.3d 922, 947 (7th Cir. 2009). Indeed, as the Seventh Circuit explains, the "Constitution does not oblige counsel to present each and every witness that is suggested to him. In fact, such tactics would be considered dilatory unless the attorney and the court believe the witness will add competent, admissible and non-cumulative testimony to the trial record." *United States v. Balzano*, 916 F.2d 1273, 1294 (7th Cir. 1990). The Court, therefore, denies Fernandez's first ineffective assistance of counsel claim.

### B. Failing to Object to Eyewitness Jury Instruction

Next, Fernandez bases his ineffective assistance of trial counsel claim on counsel's failure to object to the pattern jury instruction on eyewitnesses, namely, Illinois Pattern Jury Instruction ("IPI"), Criminal 3.15. Specifically, Fernandez argues that IPI 3.15 contained the conjunction "or" between each of the five propositions in reference to the jury weighing the eyewitness identification testimony implying that the juror could choose whether to consider that factor or not.

The post-conviction Illinois Appellate Court referenced the version of IPI 3.15 that was controlling at the time of Fernandez's jury trial:

> When you weigh the identification testimony of a witness, you should consider all the facts and circumstances in the evidence, including, but not limited

to, the following:

> [1] The opportunity the witness had to view the offender at the time of the offense.
>
> [or]
>
> [2] The witness's degree of attention at the time of the offense.
>
> [or]
>
> [3] The witness's earlier description of the offender.
>
> [or]
>
> [4] The level of certainty shown by the witness when confronting the defendant.
>
> [or]
>
> [5] The length of time between the offense and the identification confrontation.

*People v. Fernandez,* No. 1-04-2864, at 5 (citing Illinois Pattern Jury Instructions, Criminal No. 3.15 (4th ed. 2000)). In discussing Fernandez's argument based on IPI 3.15, the post-conviction Illinois Appellate Court stated:

> Defendant cites *People v. Gonzalez*, 326 Ill.App.3d 629, 761 N.E.2d 198 (2001) in support of his argument that counsel's failure to object to the instruction in this form amounted to ineffective assistance of counsel. The court there held the word "or" between the five factors enumerated in IPI 3.15 was error because it implied, as a matter of law, that an eyewitnesses's identification testimony may be deemed reliable if only one of the five factors weighs in favor of reliability. Our supreme court has since adopted this view. But it does not follow that defendant's counsel was ineffective for failing to make an objection.
>
> Defendant concedes *Gonzalez* was decided after his trial. We decline to find counsel's failure to make an objection grounded in law not yet in existence unreasonable.

*People v. Fernandez,* No. 1-04-2864, at 5-6 (internal citations omitted).

The Illinois Appellate Court further explained why counsel's failure to object to IPI 3.15

11

did not prejudice Fernandez:

> Also, defendant cannot show prejudice resulting from counsel's failure to object. IPI 3.15, if properly given to the jury to omit the word "or" between the five factors, would not have changed the result at trial. Correctly given, the jury would have considered all five factors in deciding the reliability of the victim's identification testimony: (1) the opportunity the victim had to view the offender at the time of the offense; (2) the victim's degree of attention at the time of the offense; (3) the victim's earlier description of the offender; (3) the level of certainty shown by the victim when confronting the defendant; *and* (5) the length of time between the offense and the identification. All of these factors weigh against defendant. The victim had three to five minutes to view defendant at close range and with no obstructions. It is reasonable to infer the victim viewed defendant with a great deal of attention in light of the fact defendant held a gun to the victim's chest. The victim identified defendant the following day in a police lineup. The victim again identified defendant in court. There was no evidence of uncertainty or conflicting descriptions by the victim.

*People v. Fernandez,* No. 1-04-2864, at 6-7 (emphasis in original).

Again, Fernandez has not established that the Illinois Appellate Court's application of *Strickland* to his second ineffective assistance of counsel claim was objectively unreasonable, namely, "well outside the boundaries of permissible differences of opinion." *Kamlager,* 715 F.3d at 1016 (citation omitted). As the Illinois court explained, trial counsel's failure to object to IPI 3.15 was not constitutionally deficient because any such objection would have been "grounded in law not yet in existence." It is well-established that "[t]he Sixth Amendment does not require counsel to forecast changes or advances in the law." *Valenzuela v. United States*, 261 F.3d 694, 700 (7th Cir. 2001) (quoting *Lilly v. Gilmore,* 988 F.2d 783, 786 (7th Cir. 1993)). In fact, the Seventh Circuit has explicitly rejected this same ineffective assistance of counsel claim based on IPI 3.15, noting that a lawyer's failure to object to the use of an applicable pattern jury instruction — as IPI 3.15 was at the time of Fernandez's trial — does not amount to objectively unreasonable assistance of counsel under *Strickland*. *See Smith v. McKee,* 598 F.3d

12

374, 384 (7th Cir. 2010). Fernandez's claim is further untenable because, in Illinois, Circuit Courts are required to use the pattern jury instructions that are available at the time of trial. *See People v. Polk*, 407 Ill.App.3d 80, 108, 942 N.E.2d 44, 68, 347 Ill.Dec. 211, 235 (1st Dist. 2010) ("use of the IPI is not optional, but mandatory."). As such, the Court denies Fernandez's second ineffective assistance of trial counsel claim.

### C. Failing to Provide Legal Authority that Tattoos are Proper Non-Testimonial Evidence

At trial, after the prosecution rested, Fernandez's trial counsel orally requested that the Circuit Court allow Fernandez to walk in front of the jury to display his tattoos. The Circuit Court stated that allowing Fernandez to display his tattoos as such would be testimonial in nature and that, under the circumstances, Fernandez would be subject to cross-examination. Trial counsel did not challenge the Circuit Court's legal conclusion. Post-conviction appellate counsel argued that identification was the key issue in this case and that the victim did not notice any tattoos on the perpetrator. Accordingly, post-conviction appellate counsel asserted that trial counsel's failure to challenge the Circuit Court's decision with legal authority was constitutionally ineffective.

The post-conviction Illinois Appellate Court discussed this ineffective assistance of trial counsel claim as follows:

> Defendant has again failed to make the required showing under *Strickland*. The record shows defense counsel requested that defendant display his tattoos to the jury. The trial court did not grant the request on the ground that such display would have been testimonial in nature and would have subjected defendant to cross-examination. Regardless of whether the trial court was correct in its ruling, defense counsel's actions cannot be deemed unreasonable in light thereof. Also, the evidence would have been cumulative. The State's own witnesses, the arresting officers, testified defendant had facial tattoos at the time of the arrest. Defendant was not prejudiced by the lack of cumulative evidence, especially

13

where the evidence is not in dispute.

*People v. Fernandez,* No. 1-04-2864, at 4 (internal citations omitted).

The Illinois Appellate Court's determination as to Fernandez's third ineffective assistance of trial counsel claim does not amount to an unreasonable application of *Strickland*. *See* 28 U.S.C. § 2254(d)(1). Counsel's failure to provide legal authority while making his oral motion does not amount to a constitutionally ineffective assistance of counsel under *Strickland*, especially because there is a strong presumption that counsel's performance was within the wide range of reasonable professional assistance. *See Harrington,* 131 S.Ct. at 787. In particular, it is not uncommon during trial for attorneys to make oral motions regarding evidence without citing to legal authority, after which the court, in its discretion, determines whether to admit any such evidence. Hence, trial counsel's performance did not fall "below an objective standard of reasonableness," based on "prevailing professional norms." *See Sussman v. Jenkins,* 636 F.3d 329, 349-50 (7th Cir. 2011) ("The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom.") (citation omitted).

Even if counsel should have cited legal authority in making his oral motion, the Court cannot examine this alleged error in isolation, but must analyze counsel's performance as a whole. *See Williams v. Lemmon*, 557 F.3d 534, 538 (7th Cir. 2009) (per curiam) ("It is essential to evaluate the entire course of the defense, because the question is not whether the lawyer's work was error-free, or the best possible approach, or even an average one, but whether the defendant had the 'counsel' of which the sixth amendment speaks."). In doing so, the Court would be hard-pressed to conclude that trial counsel's performance was constitutionally

ineffective under *Strickland*, especially in light of the fact that the jury acquitted Fernandez of armed robbery. Thus, the Court denies Fernandez's ineffective assistance of trial counsel claims.

## II.     Ineffective Assistance of Appellate Counsel Claims[2]

As with ineffective assistance of trial counsel claims, courts apply the two-prong test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to evaluate the effectiveness of appellate counsel. *See Warren v. Baenen,* 712 F.3d 1090, 1105 (7th Cir. 2013). Under the *Strickland* performance prong, an appellate counsel's performance is constitutionally deficient if counsel fails to appeal an issue that is obvious and clearly stronger than the claims counsel raised on appeal. *See Blake v. United States,* 723 F.3d 870, 888 (7th Cir. 2013); *Johnson v. Thurmer,* 624 F.3d 786, 793 (7th Cir. 2010). In this context, appellate counsel need not raise every non-frivolous claim, but should select among claims to maximize the likelihood of success on appeal. *See Smith v. Robbins,* 528 U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000); *McNary v. Lemke,* 708 F.3d 905, 920 (7th Cir. 2013). To establish the *Strickland* prejudice prong, Fernandez must show that there is a reasonable probability that the issue appellate counsel did not raise would have changed the outcome of the appeal. *See Richardson v. Lemke,* 745 F.3d 258, 273 (7th Cir. 2014).

In his habeas petition, Fernandez argues that his counsel on direct appeal was constitutionally ineffective for failing to raise the pattern jury instruction and tattoo display issues. The post-conviction Illinois Appellate Court concluded that — for the same reasons trial

---

[2] Respondent argues that Fernandez has procedurally defaulted his ineffective assistance of appellate counsel claims because he did not raise them in his post-conviction PLA to the Supreme Court of Illinois. Nonetheless, the Court will review Fernandez's ineffective assistance of appellate counsel claims for the sake of completeness.

counsel was not constitutionally ineffective for failing to raise these issues — appellate counsel was not constitutionally ineffective under *Strickland*. Indeed, because Fernandez's appellate counsel claims are predicated on the same alleged trial errors, the two claims rise and fall together. *See Johnson,* 624 F.3d at 793; *see also Warren,* 712 F.3d at 1106.

Further, Fernandez has not established that had his appellate counsel raised the pattern jury instruction and tattoo display issues on direct appeal the outcome of his appeal would have been different. In his amended habeas petition, Fernandez maintains that *Gonzalez* came out 17 days before Fernandez's appellate counsel filed his opening appellate brief, and thus appellate counsel was constitutionally ineffective for not raising the jury instruction claim. The Illinois Appellate Court has held that the rule announced in *Gonzalez* is not retroactive, and thus this claim is without merit. *See People v. Chatman,* 357 Ill.App.3d 695, 700, 830 N.E.2d 21, 27, 294 Ill.Dec. 21, 27 (1st Dist. 2005). Furthermore, as discussed above, Fernandez's claim is untenable because, under the Supreme Court of Illinois rules, Circuit Courts are required to use the pattern jury instructions that are available at the time of trial. *See Polk*, 407 Ill.App.3d at 108.

In addition, Fernandez cannot establish the prejudice prong regarding his ineffective assistance of appellate counsel claim based on the display of his tattoos. As the Illinois Appellate Court explained, any additional evidence of Fernandez's facial tattoos would have been cumulative because the arresting officers testified at his jury trial that Fernandez had facial tattoos at the time of his arrest. More specifically, the two police officers who apprehended Fernandez when he was fleeing from the victim's stolen car testified that Fernandez had facial tattoos. Because there was evidence before the jury that Fernandez had facial tattoos — despite

the fact that Lopez, the victim, did not mention the tattoos when describing the perpetrator to police — counsel's failure to cite legal authority about Fernandez's facial tattoos did not prejudice him. Based on this evidence, the jury was aware that Fernandez had facial tattoos and that the victim did not describe the tattoos to the police in an attempt to identify the perpetrator minutes after the vehicular hijacking. Under the circumstances, the Illinois Appellate Court's decision was not an unreasonable application of *Strickland* to the facts of this case. *See* 28 U.S.C. § 2254(d)(1). Therefore, the Court denies Fernandez's ineffective assistance of appellate counsel claims.

## III. Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Accordingly, the Court must determine whether to grant Fernandez a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) in the present order. *See Gonzalez v. Thaler,* ___ U.S. ___, 132 S.Ct. 641, 649 n.5, 181 L.Ed.2d 619 (2012).

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition, instead, he must first request a certificate of appealability. *See Miller-El v. Cockrell,* 537 U.S. 322, 335, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003); *Bolton,* 730 F.3d at 697. A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *See Miller-El,* 537 U.S. at 336; *Thomas v. Zatecky,* 712 F.3d 1004, 1006 (7th Cir. 2013); 28 U.S.C. § 2253(c)(2). Under this standard, Fernandez must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues

presented were adequate to deserve encouragement to proceed further." *Miller-El,* 537 U.S. at 336 (quoting *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)).

Here, Fernandez has failed to make a substantial showing of the denial of a constitutional right because he has not sufficiently explained why jurists of reason would debate that the Court should have resolved the present habeas petition in a different manner. *See Peterson v. Douma,* 751 F.3d 524, 528 (7th Cir. 2014). As such, the Court declines to certify any issues for appeal. *See* 28 U.S.C. § 2253(c)(2).

## CONCLUSION

For these reasons, the Court denies Fernandez's petition for a writ of habeas corpus and declines to certify any issues for appeal. *See* 28 U.S.C. §§ 2253(c)(2), 2254(d).

**Dated:** September 19, 2014

**ENTERED**

_____
**AMY J. ST. EVE**
**United States District Judge**